UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TYWANA LEWIS o/b/o**
**BRIANNA BRENDA LEWIS,**

      **Plaintiff,**            **CIVIL ACTION NO. 08-cv-14630**

   vs.

                                      **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**               **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendant's Motion for Summary Judgment (docket no. 18) should be GRANTED and Plaintiff's Motion for Summary Judgment (docket no. 15) should be DENIED, as there was substantial evidence on the record to support the Administrative Law Judge's decision to deny Social Security Supplemental Security Income.

\*\*\*

## II.   PROCEDURAL BACKGROUND:

Plaintiff is a minor child. Her mother, Tywana Lewis, filed an application for Social Security Supplemental Security Income (SSI) childhood disability benefits on her behalf on May 31, 2005 alleging that she had been disabled since May 18, 2005 due to a developmental learning disorder, lead poisoning, back injury, headaches and dysthymia. (TR 18, 30). The Social Security Administration denied benefits. (TR 29, 30-33). A requested *de novo* hearing was held on September 24, 2007, before Administrative Law Judge (ALJ) David F. Neumann, who subsequently found that the claimant was not entitled to disability benefits. (TR 15-26). Claimant's mother and

claimant testified at the hearing.  In a decision dated April 22, 2008 the ALJ determined that the claimant was not entitled to childhood disability benefits because she did not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme limitations in one domain of functioning." (TR 25).  The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review (TR 5-7).

Defendant filed a Motion for Summary Judgment and the Court ordered Plaintiff to show cause for failing to adhere to the Court's scheduling order in filing her Motion for Summary Judgment. (Docket no. 19).  Plaintiff responded to the Order to Show Cause by filing a document titled "Response To Show Summary For Cause/Document For Motion Summary" (docket no. 20) after the Court's deadline to show cause.  Plaintiff's Response referenced Plaintiff's February 12, 2009 letter and asked that the letter be considered her Motion for Summary Judgment.  The February 12, 2009 letter appears on a form titled "Scheduling Order." (Docket nos. 15, 20).  The Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally, and hold them to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court will treat Plaintiff's February 12, 2009 letter as her Motion for Summary Judgment. (Docket nos. 15, 20).  The issues for review are whether Defendant's denial of childhood Supplemental Security Income was supported by substantial evidence on the record and whether Plaintiff's claim should be remanded for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g).

### III.   PLAINTIFF'S TESTIMONY AND MEDICAL AND RECORD EVIDENCE

**A.   Testimony and Reports**

At the hearing the ALJ notified Plaintiff's mother of her right to be represented and Plaintiff's mother stated that she had received the list of representatives, had spoken to one over the phone who had told her he would take her case, but he did not return her calls thereafter. Plaintiff's mother stated at the hearing that she would proceed on her own and that she would like to waive her right to representation. (TR 172-72).

Plaintiff's mother testified that Plaintiff had elevated lead levels, but as Plaintiff got older, the lead had cleared out of her system. (TR 179). Plaintiff's mother testified that Plaintiff had never been admitted to the hospital and she had never taken medication for lead poisoning. (TR 177). Plaintiff's mother testified that Plaintiff looks at the television when it is not on and says that she is watching cartoons; her mother took her to a psychiatrist and several psychologists for this reason. (TR 168-69). Plaintiff's mother agreed that Plaintiff is easily distracted and she daydreams about television programs. (TR 185). Plaintiff's favorite television programs are Powder Puff Girls and Rug Rats. (TR 195).

Her mother testified that during the prior year she had to go to the school "constantly" for issues related to Plaintiff, including fighting. (TR 170). She testified that Plaintiff interacts "violently" with her siblings, for example, by hitting and choking a younger sibling and arguing and fighting with the other siblings. (TR 183-84). Plaintiff's mother testified that Plaintiff has one friend at school. (TR 184). Plaintiff's mother testified that Plaintiff complains of headaches and back aches and the doctors advised giving her Motrin. (TR 187). Plaintiff's eating is "pretty good" and she has trouble falling asleep some days, but sleeps "pretty good" on some days. (TR 190).

Plaintiff's mother testified that Plaintiff receives approximately one hour per day of special education classes at school. (TR 178). Plaintiff is tardy to school and her mother testified that she

has problems getting Plaintiff ready for school in the morning because Plaintiff complains that she hates school, the other kids and the teacher. (TR 191). Plaintiff's hearing and speech are fine and her mother testified that she was told that Plaintiff has a slight astigmatism. (TR 191).

Plaintiff colors, plays with dolls, runs and plays outside. (TR 191, 194). Plaintiff helps with household chores such as picking up shoes. (TR 192). Plaintiff herself testified that she also hangs up clothes, picks up the trash and puts belts on a hangar. (TR 192). Her mother testified that Plaintiff needs to have her clothes laid out for her and Plaintiff testified that she can wash and get herself ready for school. (TR 193).

### B.     Medical and Record Evidence

Plaintiff was tested for lead poisoning on August 23, 2004 and the result was a "10 capillary." (TR 84). When Plaintiff was retested on November 21, 2005 the result was a 3.7 and it was noted that the result required "[n]o further action unless exposure sources change." (TR 130).

Plaintiff underwent a state agency psychological assessment examination on August 12, 2005 with Hugh Bray, Ph.D., licensed psychologist. (TR 87-89). Dr. Bray noted that Plaintiff was shy, cooperative and responsive and she "comprehended tasks, was attentive and able to focus on tasks within normal limits." (TR 87). "Her social skills were average for a 7-year-old." (TR 87). Plaintiff's Weschler Full Scale IQ was 68, which was "in the mildly impaired range of intellectual functioning at the 2nd percentile comparted with her age group peers." (TR 88). Her verbal comprehension score was 89, her perceptual reasoning score was 67, and working memory and processing speed scores were each 68. (TR 88). Dr. Bray found that Plaintiff's reading grade equivalent was preschool. (TR 89). Dr. Bray diagnosed Plaintiff with a developmental learning

disorder in terms of reading and possible generalized anxiety and dysthymia secondary to reading. (TR 89). He assigned a GAF of 50. (TR 89).

Plaintiff underwent a state agency physical examination on August 15, 2005 with C.C. Pujara, M.D. (TR 90-92). Dr. Pujara noted that there was a note from the school indicating that Plaintiff was absent and tardy often. (TR 90). Dr. Pujara diagnosed Plaintiff will a history of elevated lead level, headache and back pain, noting that Plaintiff had undergone two spinal taps in the past and a learning disability, and advised that Plaintiff's eyes be checked. (TR 91).

In September and October 2005 Agency consultants completed a Childhood Disability Evaluation Form and concluded that Plaintiff had "less than marked" limitations in the functional areas of acquiring and using information, attending and completing tasks, and interacting and relating with others. (TR 104-05). Plaintiff had no limitations in the functional areas of moving about and manipulating objections, caring for herself, and health and physical well-being. (TR 105).

In August 2007 Plaintiff underwent a Bio-psychosocial History and Assessment at an outpatient health center. (TR 141). The evaluating social worker noted that Plaintiff complained of problems at home with her younger siblings and problems with boys being aggressive at school. The evaluator noted that Plaintiff's mother reported that Plaintiff had some self-abusive behaviors including pulling her hair out. (TR 141). The problems which were identified in the assessment were lying, self-abusive behavior, daydreaming, comprehension and learning difficulties. (TR 149).

The transcript before the Court contains several records from Plaintiff's school. On a 2004-2005 Grade 1 (second quarter) Progress Report, Plaintiff's teacher noted that Plaintiff "needs more help" in all categories except handwriting and social habits, categories and skills in which she had improved to "progressing satisfactorily." (TR 86). Plaintiff repeated the first grade for the 2005-

2006 school year. (TR 85). Plaintiff's teacher completed a teacher questionnaire dated September 12, 2005 and noted problems ranging from no problems to very serious problems in the activities of the following domain areas: Acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. (TR 63-70). Plaintiff's progress report for the first grade, dated December 5, 2005, noted that Plaintiff was improving in handwriting, was average in science, social studies and mathematics, needed to improve in English, and was between "poor" and "needed to improve" in reading. (TR 134).

In November 2005[1] Plaintiff was evaluated by her school district for special education services and underwent psychological evaluation at her school with Audrey J. Hamilton, school psychologist. (TR 109, 113). Plaintiff obtained a WISC-IV full scale IQ of 86[2]. (TR 113). The evaluator noted that Plaintiff "remained focused throughout the evaluation process." The evaluator noted that Plaintiff's general cognitive ability was in the "Low Average range of intellectual functioning," her "overall thinking and reasoning abilities exceed those of approximately 18% of children her age," "her ability to think with words is comparable to her ability to reason without the use of words," and both her "verbal and nonverbal reasoning abilities are in the Average range." (TR 114). The evaluator concluded that Plaintiff was eligible for Special Education services as a learning disabled student. (TR 116).

Plaintiff was evaluated by a "multidisciplinary evaluation team" on January 23, 2006. (TR 117). The team members agreed with Plaintiff's designation as having a "Specific Learning

---

[1]There appears to be a typographical error on this evaluation report where it states that the evaluation date was "1-29-05," however, the "ERM date" and the Referral/Evaluation Review/Consent Form are dated "11/28/05." (TR 109, 113).

[2]With other scores as follows: VCI=98, WMI=62, PRI=102, PSI=83. (TR 113).

Disability" (340.1713) and recommended that Plaintiff should participate in five hours of special education and twenty-five hours of general education per week. (TR 117-22). The team noted that Plaintiff was able to read high frequency words but had an inability to decode other words. (TR 117). Plaintiff's teacher Ms. Campbell completed an undated Comprehensive Educational Report indicating that Plaintiff demonstrated weaknesses in reading and was able to read a few high frequency words. (TR 128).

Plaintiff's second grade teacher Georgia M. Lemmons completed a Teacher Questionnaire dated October 15, 2007. The teacher noted that Plaintiff attends special education classes three times per week for two hours each time. Plaintiff was reading and performing math at a first grade level and had written language skills at a kindergarten level. (TR 73). Ms. Lemmons noted that Plaintiff "needs constant help with all independent activities. Work does not get completed without help." (TR 74).

A progress report from the 2006 to 2007 school year which addressed the goals and objectives of Plaintiff's January 2006 Individualized Education Plan ("IEP") shows that Plaintiff's progress improved toward recognizing common sight words, following oral directives and reading and following simple/complex directions. (TR 136-37). She made "moderate" progress toward her objectives in more than half of her objective areas and limited progress toward the remaining objectives. (TR 136-37).

There are no teacher notes or school records which indicate that Plaintiff has any physical impairments, limitations, or pain. (TR 63, 77). Teacher Questionnaires from September 12, 2005 and October 15, 2007 both indicate that Plaintiff has no problems in the domain of "moving about and manipulating objects" and her functioning in this area is "age-appropriate." (TR 67, 77).

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

After finding that the claimant was a school-aged child on the date the application was filed and the date the decision was entered and had never performed substantial gainful activity, the ALJ determined that she was impaired as a result of a developmental learning disorder and dysthymia, severe impairments, but that these problems did not meet or medically equal any of those found in the Listing of Impairments. (TR 18). Moreover, the ALJ found that the claimant's impairments did not "functionally equal" the Listing because she did not have an impairment or combination of impairments that resulted in marked and severe functional limitations. The ALJ concluded that Plaintiff was not disabled under the Social Security Act since the May 31, 2005 filing date.

## V. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this court to try cases *de novo*, or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts").

**B.     Analysis**

*1.     Eligibility For SSI Childhood Disability Benefits*

A child will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

> 1. A child will be found "not disabled" if she engages in substantial gainful activity.
>
> 2. A child will be found "not disabled" if she does not have a severe impairment or combination of impairments.
>
> 3. A child will be found "disabled" if she has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a)-(d) (2007).

To determine whether a child's impairment(s) functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a)(2003). The SSA will consider how a child functions in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical well-being.

20 C.F.R. § 416.926a(b)(1).

If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[3] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

### 2. *Whether Substantial Evidence Supports the ALJ's Findings With Respect To The Medical Record and Whether a Sentence Six Remand Is Necessary*

Plaintiff's mother contends in the Motion for Summary Judgment (docket no. 15) that Plaintiff has arthritis that causes her a great deal of pain, results in Plaintiff being late for school in the morning, limits her participation in gym class, requires that her lunch be brought to her, and requires that Plaintiff's mother assist her in leaving school when she has a flare-up of her arthritis. (Docket no. 15).

---

[3]A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

Generally, any issues not specifically presented to the Court would be waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, the Court is charged with the duty to determine whether an ALJ's findings are supported by substantial evidence and whether that ALJ employed the proper legal standards. *Walters*, 127 F.3d at 528. Part of that duty, at least in this case, is to determine if substantial evidence supports the ALJ's determinations. Plaintiff's assertion is analogous to alleging that she suffers from arthritis, a severe condition at step two and a condition resulting in a marked limitation in Plaintiff's ability in one or more of the six areas of functioning, by itself or in combination with Plaintiff's other impairments. Because Plaintiff has raised the issue of her limitations and the severity of her arthritis, the Court will consider steps two and three of the ALJ's decision.

At step two, the ALJ found that Plaintiff suffers from a developmental learning disorder and dysthymia. (TR 18). The ALJ properly pointed out that Hugh Bray, Ph.D., Licensed Psychologist, diagnosed Plaintiff with a developmental learning disorder in terms of reading, possible generalized anxiety secondary to reading and dysthymia secondary to reading. (TR 89). The diagnoses of developmental learning disorder and dysthymia are supported by the findings of a special education program team that concluded that Plaintiff qualified for special education classes because of her specific learning disability. (TR 118-24).

"Medical evidence of ... impairment(s) must describe symptoms, signs, and laboratory findings." 20 C.F.R. § 416.924a(a)(1). Other than the developmental learning disorder and dysthymia, the only other impairments for which there is medical evidence in the record that was before the ALJ are Plaintiff's lead levels. The results from a lead poisoning test performed on August 23, 2004 revealed a result of "10 Capillary," and advised that another test be performed on

Plaintiff as soon as possible. (TR 84). A test dated November 21, 2005 resulted in a score of "3.7" and stated "[n]o additional action unless exposure sources change." (TR 130). There is no evidence in the record from which to find that Plaintiff suffers from lead poisoning and has limitations or impairments as a result.

The record also shows that Plaintiff complained of eye problems during a Well Child Exam which bears a fax date stamp from February 15, 2008. (TR 152). The review of systems was noted as "unremarkable." (TR 152). Plaintiff was noted to have "poor vision" and referred to an ophthalmic doctor. (TR 152). The ALJ's findings at step two are supported by substantial evidence. There is simply no objective medical evidence in the record to support the finding of impairments other than a developmental learning disorder and dysthymia.

Plaintiff's mother argues in her motion for summary judgment that Plaintiff suffers from arthritis and has submitted to the Appeals Council and this Court additional medical records post-dating the ALJ's April 22, 2008 decision[4]. In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. § 416.1470(b), "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

---

[4] The Court also notes that despite Plaintiff's mother's report that Plaintiff misses school and is tardy due to pain, a Teacher Questionnaire dated October 15, 2007 from Plaintiff's second grade notes that there is "no" unusual degree of absenteeism and that she does not "frequently miss school due to illness." (TR 73).

One of the documents submitted with Plaintiff's Complaint is a Consultation Request Form for Midwest Advantage Health Plan dated July 31, 2008. (Docket no. 1 pp. 6 and 40 of 42). The Request Form notes a diagnosis of "Epiphysitis," and Plaintiff was referred for two visits for consultation to "evaluate [and] treat" with a start date of August 8, 2008 and an end date of September 8, 2008. (Docket no. 1 p. 40 of 42). There is no further information showing the basis for this diagnosis. The other records include an Outpatient General Consent Form on which the date is unclear and a General Consent Form for Admission and Treatment dated August 11, 2008. The consent forms contain no medical information and do not provide evidence of Plaintiff's conditions or impairments. (Docket no. 1 pp. 5 and 7 of 42). The remaining records submitted to the Appeals Council include a record from Metropolitan Orthopaedic Associates, P.C. dated July 28, 2006 for hip x-rays and noting "fracture care," and Patient Discharge Instructions from Beaumont Hospital dated July 21, 2008 which note Plaintiff's emergency center diagnosis as "traumatic arthritis." (TR 160-61). There is no other supporting medical evidence of this diagnosis. Plaintiff was prescribed Naprosyn and directed to follow-up in seven to ten days. (Docket no. 161). The July 21, 2008 Discharge Instruction document is the only record that mentions "arthritis."

The ALJ decision is dated April 22, 2008. The newly submitted evidence was submitted to the Appeals Council, however, there is no indication that any of this material relates to the period of time prior to the ALJ's decision. There is no medical evidence of traumatic arthritis, or any arthritis, which developed during the period prior to the date of the ALJ's decision. Furthermore, Plaintiff makes no showing that this new information is material, nor does she show good cause for the failure to submit it earlier. An examination of the evidence shows that it is not material. For

these reasons, the Court will deny Plaintiff's request to remand this case for consideration of the documents which were submitted to the Appeals Council and this Court.

### 3. *Whether The ALJ's Decision Regarding Plaintiff's Functional Limitations Is Supported By Substantial Evidence*

The ALJ properly found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listings. 20 C.F.R. § 416.924(d). The record lacks medical support for Plaintiff's alleged physical impairments. Although the ALJ found that Plaintiff has severe mental impairments, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff did not have a disability meeting or medically equal to the Listing.

The ALJ analyzed whether Plaintiff's impairment or combination of impairments functionally equals the Listings. Under Pt. 404, Subpt. P, App. 1, Listing 112.05(D) the ALJ considered whether Plaintiff had another physical or mental impairment imposing "additional and significant limitation of function."

The ALJ found that Plaintiff although Plaintiff had problems in acquiring and using information (functional domain no. 1), they were less than marked. (TR 20-21). The ALJ correctly pointed out that after Plaintiff's second attempt at the first grade, she was promoted to the second grade. (TR 73, 85). Plaintiff also attended 25 hours of general education classes per week as compared to five hours of special education classes. (TR 117-22). There was noted improvement in progress toward Plaintiff's IEP goals in special education and she was expected to meet the goals. (TR 136-37). The ALJ also relied on the December 2005 progress report showing that Plaintiff was average in science, social studies and mathematics, had problems in English and reading and was improving in handwriting. (TR 134).

The ALJ found that Plaintiff had less than marked limitations in her ability to attend to and complete tasks (functional domain no. 2). (TR 22). Dr. Bray's report from August 2005 stated that Plaintiff "comprehended the tasks, was attentive and able to focus on tasks within normal limits" and put forth "appropriate effort." (TR 87-89). The ALJ again noted that Plaintiff was able to complete her second attempt at the first grade and progress to the second grade. (TR 22, 73, 85). Plaintiff's second grade teacher noted that Plaintiff needs "constant help with all independent activities" and "work does not get completed without help." (TR 74). Plaintiff's IEP, however, showed improvement in Plaintiff's ability to follow oral directives of more than one step and read/follow simple/complex directives. (TR 136-37). During the 2006-2007 school year, Plaintiff went from making limited progress to making moderate progress toward these objectives.

The ALJ found that Plaintiff had less than marked limitations in interacting and relating with others (functional domain no. 3). (TR 23). The ALJ correctly pointed out that Dr. Bray reported that Plaintiff had average social skills for her age. (TR 87). Despite having problems with her seven siblings at home including bickering, aggression and competitiveness, one evaluator noted that Plaintiff was bonded with her siblings and Plaintiff reported having a friend at school with whom she spends lunch period. (TR 141, 145, 147). As the ALJ pointed out, despite Ms. Lemmons's October 2007 report that Plaintiff has "serious" problems following rules and respecting and/or obeying adults in authority, there is no evidence in the record of punishment or discipline for such behavior. (TR 23). Ms. Lemmons noted that Plaintiff has no problems expressing anger appropriately, and only slight problems in playing cooperatively with other children, making and keeping friends, asking permission and seeking attention appropriately. (TR 76).

The ALJ found that Plaintiff has no limitations in moving about and manipulating objects (functional domain no. 4). (TR 23-24). As set forth above, there is no evidence that Plaintiff has any limitations in this functional area or any severe physical impairments. Plaintiff reported that she performs some chores around the house, including hanging up clothes, picking up trash and putting away shoes and belts. (TR 192).

The ALJ found that Plaintiff has less than marked limitations in her ability to care for herself (functional domain no. 5). (TR 24). The ALJ pointed out that Ms. Singleton noted that Plaintiff has "very serious" problems knowing when to ask for help and "obvious" problems responding to changes in her mood and "using appropriate coping skills to meet daily demands of school environment." (TR 68). Ms. Lemmons noted that Plaintiff has no problems with "[u]sing good judgment regarding personal safety and dangerous circumstances" and Plaintiff's mother reported that Plaintiff eats well and sometimes sleeps well. Although Plaintiff's mother reported that she lays Plaintiff's clothing out for her, there is substantial evidence in the record that Plaintiff is able to perform self-care tasks. Plaintiff testified that she can wash and get herself ready for school. (TR 193). Both Ms. Singleton and Ms. Lemmons reported that Plaintiff has no problem taking care of her personal hygiene and caring for her physical needs. (TR 68, 78).

Finally, the ALJ found that Plaintiff had no limitations in the area of health and physical well-being (functional domain no. 6). (TR 25). This is consistent with the record as discussed above. The ALJ's findings that Plaintiff had less than marked or no limitations in each of the functional areas is supported by substantial evidence. It is worth noting that the ALJ's findings are also consistent with the agency consultants' evaluation. (TR 105).

## VI.     CONCLUSION

The ALJ's decision to deny benefits is based on substantial evidence in the record. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 18, 2009  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

  I hereby certify that a copy of this Report and Recommendation was served upon Tywana Lewis and Counsel of Record on this date.

Dated: December 18, 2009     s/ Lisa C. Bartlett
                Case Manager